**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| Samuel Rogers, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:22-cv-1051 |
| v. | § § | |
| National Car Cure, LLC and SunPath, Ltd., | § § § § | **Jury Trial Demanded** |
| Defendants. | § § § | |

## COMPLAINT

**Samuel Rogers** (hereinafter referred to as "Plaintiff"), by and through his attorneys,

**Kimmel & Silverman, P.C.**, alleges the following against **National Car Cure, LLC** and

**SunPath, Ltd.** (collectively "Defendants"):

### INTRODUCTION

1.      Plaintiff's Complaint is based on the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. §227, *et seq.* and § 302.101 of the Texas Business & Commercial Code.

### JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over the TCPA claims in this action

under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising

under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-

87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-

question subject-matter jurisdiction to hear private civil suits under the TCPA).

3.      Supplemental jurisdiction for Plaintiff's related state law claims arises under 28

U.S.C. §1367.

1

4.      Defendants regularly conduct business in the State of Texas.

5.      The occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the State of Texas.

6.      This Lawsuit relates to Defendants' phone calls to Plaintiff's cell phone numbers, which are assigned "281" and "713" area code, associated with Houston area.

7.      Therefore, with each telephone made by Defendants to Plaintiff, Defendants knowingly and purposefully availed themselves to the State of Texas and to this District specifically.

8.      Accordingly, this Court has personal jurisdiction over Defendants in this matter.

9.      Furthermore, venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

10.     Plaintiff is a natural person residing in Katy, Texas 77494354.

11.     Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

12.     Defendant National Car Cure, LLC ("NCC") is a business entity with a mailing address at 1665 Palm Beach Lakes Blvd, Ste. 215, West Palm Beach Florida 33401.

13.     Defendant SunPath, Ltd. ("SunPath") is a business entity with its principal place of business and mailing address at 50 Braintree Hill Office Park, Suite 310, Braintree, Massachusetts, 02184.

14.     Defendants are "persons" as that term is defined by 47 U.S.C. §153(39)

15.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**FACTUAL ALLEGATIONS**

SunPath, Telemarketing and its Use of Vendors to Sell Extended Warranties

16.     Defendant SunPath is in the business of administrating extended warranties to consumers.

17.     Much of SunPath's business comes by way of telemarketing.

18.     Specifically, SunPath is a warranty administrator that provides administrative services for extended automobile warranty plans and service contracts to consumers.

19.     Defendant engages in telemarketing in order to solicit donations for, *inter alia*, automobile warranties.

20.     One of SunPath's strategies for telemarketing involves the hiring of call centers to place calls on its behalf using automatic telephone dialing system and automated/pre-recorded voice.

21.     Many of the calls made by SunPath's vendors begin with an automated/pre-recorded voice.

22.     At all times relevant hereto, SunPath contracted with telemarketing vendors and entered into agreements referred to as "Call Center Marketing Agreements."[1]

23.     In those Agreements, SunPath's vendors are required to act as fiduciaries toward SunPath.

24.     To generate business through sales, SunPath relies on telemarketing services conducted by third parties known as "lead generators," including but not limited to Defendant NCC.

---

[1] Plaintiff pleads these paragraphs in the present tense.  However to be clear, it is a description of SunPath's policies and agreements with vendors in 2019 and 2020.

25.     Furthermore, SunPath exercises substantial control over its vendors, where it limits the names that the vendors can use for their businesses, limits the phrases the vendors can use when selling SunPath Warranties and requires vendors to meet certain staffing requirements when selling SunPath warranties.

26.     SunPath's vendors receive compensation based on the quantity of SunPath warranties sold.

27.     SunPath authorizes and ratifies the calls made by its telemarketers.

**Factual Background as to Plaintiff Samuel Rogers**

28.     At all times relevant hereto, Plaintiff maintained a cellular telephone, the number for which was (281) XXX-8396.

29.     At all times relevant hereto, Plaintiff primarily used that cell phone for residential purposes.

30.     Plaintiff registered that cell phone number on the Do Not Call Registry on or around May 14, 2008.

31.     Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

32.     At all times relevant hereto, Plaintiff maintained a cellular telephone, the number for which was (281) XXX-5208.

33.     At all times relevant hereto, Plaintiff primarily used that cell phone for residential purposes.

34.     Plaintiff registered that cell phone number on the Do Not Call Registry on or around August 1, 2019.

35.     Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

36.     At all time relevant hereto, Plaintiff maintained a cellular telephone, the number for which was (713) XXX-5430.

37.     At all times relevant hereto, Plaintiff primarily used that cell phone for residential purposes.

38.     Plaintiff registered that cell phone number on the Do Not Call Registry on or around August 1, 2019.

39.     Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

40.     Beginning on or around August 2019, Defendants began calling Mr. Rogers on his cellular telephones to sell Plaintiff an automobile warranty administrated by SunPath.

41.     Because Plaintiff resides in the Houston area and his telephone numbers have a Houston based area code, Defendants purposefully and knowingly availed themselves to Texas through its calls to Plaintiff and its efforts to solicit business from Plaintiff.

42.     Prior to receiving calls from Defendant, Plaintiff never sought information about a motor vehicle warranty and did not consent to the calls from Defendants.

43.     The calls were not made for "emergency purposes," but rather for telemarketing purposes.

44.     Despite registration on the Do Not Call Registry, Defendants placed calls to Mr. Rogers on multiple occasions attempting to sell a SunPath warranty.

45.     Defendants placed calls which utilized a pre-recorded voice presenting a menu of options from which Mr. Rogers was asked to select in order to speak with a representative about extended warranty plans.

46.     In total, Defendants placed at least 25 calls to Plaintiff on the three separate telephones.

47.     An exhaustive list of those calls to Plaintiff's personal phone ending in 8396 is below

| Date: | Caller ID: |
|---|---|
| August 2, 2019 | (281) 534-8516 |
| August 2, 2019 | (713) 508-1138 |
| August 28, 2019 | (281) 513-4741 |
| September 30, 2019 | (512) 917-2911 |
| September 30, 2019 | (561) 264-9053 |
| February 20, 2020 | (402) 915-1475 |
| May 16, 2020 | (281) 513-7255 |

48.     Upon information and belief, Plaintiff received additional calls to the phone number ending in 8396 from Defendants not included in the above.

49.     Plaintiff additionally received calls to the phone number ending in 5430 which is maintained by Plaintiff.

50.     An exhaustive list of those calls follows:

| Date: | Caller ID: |
|---|---|
| August 6, 2019 | (713) 645-4971 |
| October 22, 2019 | (713) 846-3822 |
| November 21, 2019 | (713) 841-7772 |
| November 27, 2019 | (713) 840-9783 |
| December 11, 2019 | (832) 402-9062 |
| December 11, 2019 | (346)-338-1327 |
| February 18, 2020 | (713) 842-3152 |
| March 4, 2020 | |
| April 27, 2020 | (361) 201-9447 |
| June 16, 2020 | (832) 734-6087 |

51.     Upon information and belief, Plaintiff received additional calls to the phone number ending in 5430 from Defendants not included in the above-list.

52.     Plaintiff additionally received calls to the phone number ending in 5208 which is maintained by Plaintiff.

53.     An exhaustive list of those calls follows:

| Date: | Caller ID: |
| --- | --- |
| September 12, 2019 | (281) 581-0786 |
| March 5, 2020 | (832) 345-9386 |
| March 13, 2020 | (281) 671-1900 |
| March 13, 2020 | (281) 306-5486 |
| March 18, 2020 | (346) 289-1966 |
| March 25, 2020 | (281) 675-6763 |
| April 29, 2020 | (346) 273-2865 |
| May 5, 2020 | (346) 271-0648 |

54.     Upon information and belief, Plaintiff received additional calls to the phone number ending in 5208 from Defendants not included in the above-list.

55.     During one of the calls from Defendant, Plaintiff was given the option to "press '9' to be removed from our calling list."

56.     Plaintiff pressed "9" to be removed from the calling list but was instead informed that "9" was an invalid entry.

57.     Plaintiff attempted to press "9" again and was informed for a second time that "9" was an invalid entry,

58.     Plaintiff pressed "1" and was ultimately connected with one of the Defendants' live agents.

59.     In order to ascertain the identity of the party making harassing solicitation calls, Plaintiff answered the agent's questions about his vehicle to find out information about the company.

60.     In an effort to obtain the identity/identities of the calling party/parties, Plaintiff agreed to purchase a warranty from Defendants.  Plaintiff was told that if he purchased the

warranty, he would be sent a physical copy of the policy with the company's details contained within.

61.     Specifically, Plaintiff received in the mail an automobile warranty.  That warrant identified "NCC" as the "Seller/Dealer/Vendor" and SunPath as the administrator.

62.     Shortly after receiving the warranty (which was purchased for investigative purposes only, Plaintiff terminated the contract with Defendants.

63.     Plaintiff has learned that none of the Defendants registered to do business as a telemarketer with the Texas Secretary of State, despite the obligation to do so when soliciting business through telemarketing.

64.     As a result of the foregoing, Plaintiff experienced frustrations, annoyance, irritation and a sense that his privacy has been invaded by Defendants.

65.     The foregoing acts and omissions were in violation of the TCPA and Texas Business and Commerce Code.

## COUNT I
### DEFENDANTS VIOLATED THE TCPA 47 U.S.C. §227(b)

66.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

67.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

68.     Defendants initiated multiple telephone calls to Plaintiff's cellular telephone number using a pre-recorded voice.

69.     Defendants' calls were not made for "emergency purposes."

70.     Defendants' calls to Plaintiff's cellular telephone without any prior express consent.

71.     Defendants contacted Plaintiff despite the fact that Plaintiff's number was listed on the Do Not Call Registry since as early as 2008 for one of his phone numbers.

72.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

73.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

74.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)

75.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

76.     The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered their telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

77.     Defendants contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since 2008 for one of his phone numbers.

78.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

79.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

80.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

**COUNT III**
**DEFENDANTS VIOLATED § 302.101 of**
**THE TEXAS BUSINESS & COMMERCE CODE**

81.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

82.     §302.101 of the Texas Business & Commerce Code prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

83.     Defendants violated § 302.101 of the Texas Business & Commerce Code when their representatives engaged in continuous and repetitive telephone solicitation of Plaintiff without obtaining a registration certificate from the Office of the Secretary of State.

84.     §302.302(a) of the Texas Business & Commerce Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover

all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

**Wherefore**, Plaintiff, **Samuel Rogers,** respectfully prays for judgment as follows:

a.  All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A)) and §302.302 of the Texas Business and Commerce Code;

b.  Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c.  Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d.  Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c));

e.  Statutory damages of $5,000.00 per violation (as provided under §302.302(a) of the Texas Business & Commerce Code);

f.  All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to §302.302(a) of the Texas Business and Commerce Code;

g.  Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and

h.  Any other relief this Honorable Court deems appropriate.

[THIS PORTION OF THE PAGE IS INTENTIONALLY LEFT BLANK]

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Samuel Rogers**, demands a jury trial in this case.

Respectfully submitted,

Dated: March 31, 2022

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
SDTX ID No. 3568914
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com