United States District Court
Southern District of Texas
**ENTERED**
October 19, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMUEL ROGERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-1051 |
| | § | |
| NATIONAL CAR CURE, LLC | § | |
| and SUNPATH, LTD., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Samuel Rogers ("Plaintiff"), filed suit in this court on March 31, 2022, against defendants National Car Cure, LLC ("NCC") and SunPath, Ltd. ("SunPath") (collectively, "Defendants").[1] On June 21, 2022, Plaintiff filed an amended Complaint ("Amended Complaint") asserting violations of the Telephone Consumer Protection Act ("TCPA") and the Texas Business & Commerce Code.[2] Pending before the court is Defendant, SunPath Ltd.'s, Motion to Dismiss Plaintiff, Samuel Rogers', Amended Complaint [D.E. 10] Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("SunPath's Motion to Dismiss" or "SunPath's MTD") (Docket Entry No. 22). For the reasons stated below, SunPath's Motion to Dismiss will be denied.

---

[1]Complaint, Docket Entry No. 1, p. 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

[2]Amended Complaint, Docket Entry No. 10, pp. 11-14.

## I.   Factual and Procedural Background

### A.   Plaintiff's Allegations

Plaintiff resides in Katy, Texas.[3]   SunPath is a Delaware corporation with its principal place of business in Braintree, Massachusetts.[4]   SunPath "provides administrative services for extended automobile warranty plans and service contracts to consumers."[5]   "Defendant National Car Cure [] is a business entity with a mailing address [in] West Palm Beach Florida."[6]   SunPath hires "call centers to place calls on its behalf using automatic telephone dialing system and automated/prerecorded voice."[7] "SunPath contracted with telemarketing vendors and entered into agreements referred to as 'Call Center Marketing Agreements.'"[8] The Amended Complaint attaches an example from another TCPA matter involving SunPath.[9]   "To generate business through sales, SunPath

---

[3]Id. at 2 ¶ 10.

[4]Id. ¶ 13; Declaration of Andrew Garcia in Support of Defendant, Sunpath Ltd's Motion to Dismiss Plaintiff's Samuel Rogers', Complaint ("Garcia Declaration"), Exhibit A to SunPath's MTD, Docket Entry No. 22-1, p. 1.

[5]Amended Complaint, Docket Entry No. 10, p. 3 ¶ 18.

[6]Id. at 2 ¶ 12.

[7]Id. at 3 ¶ 20.

[8]Id. ¶ 22.

[9]Id.; Call Center Marketing Agreement ("CCMA"), Sealed Exhibit A to Amended Complaint, Docket Entry No. 12.

relies on telemarketing services conducted by third parties known as 'lead generators,' including but not limited to Defendant NCC."[10]

At all relevant times Plaintiff maintained three cell phone numbers with Houston based area codes, each of which is primarily used for residential purposes.[11]  Plaintiff registered each number on the National Do Not Call Registry.[12]

NCC placed at least 25 calls to the three cell phones trying to sell a SunPath warranty, beginning on or around August of 2019.[13] The calls "utilized a pre-recorded voice presenting a menu of options from which [Plaintiff] was asked to select in order to speak with a representative about extended warranty plans."[14]

In order to identify the source of the calls, Plaintiff spoke "with one of Defendants' live agents."[15]  "Plaintiff agreed to purchase a warranty from Defendants," and received in the mail an automobile warranty that "identified 'NCC' as the 'Seller/ Dealer/Vendor' and SunPath as the administrator."[16]  "Accordingly,

---

[10]Amended Complaint, Docket Entry No. 10, p. 4 ¶ 24.

[11]Id. at 5, 6 ¶¶ 32-33, 36-37, 40-41.  The numbers are (281) XXX-8396, (281) XXX-5208, and (713) XXX-5430.  Id. ¶¶ 32, 36, 40.

[12]Id. at 5, 6 ¶¶ 34, 38, 42.  Plaintiff registered the 8396 number on the Do Not Call Registry on May 14, 2018, and the other two numbers on August 1, 2019.

[13]Id. at 6 ¶ 44, 7 ¶ 51.

[14]Id. at 6 ¶ 49.

[15]Id. at 8 ¶ 62.

[16]Id. at 9 ¶¶ 64-65; Exhibit B to Amended Complaint, Docket Entry No. 10-2, p. 2.

Plaintiff understands and therefore avers SunPath and NCC entered into a [CCMA] substantially similar to" the one attached to the Complaint, with NCC as the seller.[17]   Plaintiff's payee for the warranty was listed as "National Car Cure West Palm Beach, FL."[18]

## B.   The CCMA

The CCMA "grants [the seller] authority to solicit Customers on a non-exclusive basis only in the [defined territory]."[19]   It provides that the seller "agrees to actively market the Products."[20] It requires the seller to "install, or arrange for the installation, of the Company's Products" and to "perform such other acts as are necessary for the proper conduct of the business."[21] The seller "shall at all times adhere to [SunPath's] written Standards of Conduct prescribed by [SunPath] . . . and [the seller] has no authority to deviate from, alter or amend same."[22]

The Standards of Conduct include rules restricting the words sellers can use to describe SunPath's products.   For example, one rule bans using the words "warranty," "dealer," "dealership," and

---

[17]Amended Complaint, Docket Entry No. 10, p. 9 ¶ 67.

[18]Exhibit C to Amended Complaint, Docket Entry No. 10-3, p. 2.

[19]CCMA, Sealed Exhibit A to Amended Complaint, Docket Entry No. 12, p. 2 ¶ 1.

[20]Id. ¶ 5.

[21]Id. ¶¶ 4, 6.

[22]Id. ¶ 2.

"manufacturer."[23]  The seller's use of the words insurance, dealer, dealership, or manufacturer is also restricted.  The Standards restricts the seller's use of language describing an offer as exclusive or limited in time.[24]  The Standards also specifies a list of information that the seller must include in its description of the products.[25]

The CCMA requires the seller to "*record all phone sales*" and to make the recordings "available on demand to" SunPath.[26]  The seller is also required to "*maintain coverage to adequately fund claims*," "*provide the purchaser with a copy of the contract*," "employ an *adequate staff* to promptly respond to customer service inquiries," "honor a consumer's request to *opt out* of receiving future marketing pieces and/or telephone solicitations," "not knowingly sell a consumer *duplicative coverage*," "not sell *personal information*," "appoint a . . . *compliance officer*," "meet all *state licensing and marketing requirements*," and "conduct *criminal background checks* on all newly hired employees."[27]  The CCMA also has numerous requirements that sellers comply with applicable laws

---

[23]Id., Standards of Conduct ("Standards"), p. 8.

[24]Id.

[25]Id. at 10.

[26]Id. at 9.

[27]Id.

and eliminate numbers on several do-not-call lists.[28] The CCMA
imposes rules regarding use of autodialers, refunds, use of
customer information, privacy, and data collection.[29]

## C.   Andrew Garcia's Declaration

SunPath offers the Declaration of its President, Andrew
Garcia, in support of its Motion to Dismiss.[30] Mr. Garcia declares
that "SunPath does not engage in outbound telemarketing itself and
therefore does not initiate outbound sales calls to consumers.
Therefore, SunPath did not initiate any of the calls to the
Plaintiff alleged in this Complaint in this case."[31] "Moreover,
SunPath did not direct, oversee, or manage any third party
initiating the [alleged calls], or any other outbound telemarketing
phone calls to consumers in Texas.  SunPath did not cause anyone
else to call Plaintiff."[32] "SunPath has no role or involvement in
the third-party telemarketing companies' selection of who to market
to, or the manner in which they conduct their marketing
operations."[33] "Further, SunPath has no oversight or control over

---

[28]Id. at 11-12.

[29]Id. at 12-14.

[30]Garcia Declaration, Exhibit A to SunPath's MTD, Docket Entry
No. 22-1.

[31]Id. at 1 ¶ 5.

[32]Id. at 1-2 ¶ 6.

[33]Id. at 2 ¶ 7.

what the marketing companies' representatives say.  The marketing operations of these companies, including how they obtain leads and what script they use, are conducted independently by the telemarketing companies themselves."[34]

## II.  Legal Standard

### A.  Personal Jurisdiction

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)).

---

[34]Id. ¶ 8.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). Plaintiff argues that the court has specific jurisdiction over SunPath.[35] "For specific jurisdiction to be proper, Due Process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." In re Chinese-Manufactured Drywall Products Liability Litigation, 753 F.3d 521, 539-40 (5th Cir. 2014).

"[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." Daimler AG v. Bauman, 134 S. Ct. 746, 759 n.13 (2014) (noting approvingly that "'marketing a product through a distributor who has agreed to serve as the sales agent in the forum State' may amount to purposeful availment" (quoting Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, 107 S. Ct. 1026, 1032 (1987) (opinion of O'Connor, J.)). Courts have applied state agency law in determining whether to impute an alleged agent's contacts to the alleged principal. See In re Chinese-Manufactured Drywall, 753 F.3d at 529 n.6. In Texas, 'agency is the consensual relationship between two parties when one, the agent,

---

[35]Plaintiff's Response in Opposition to Defendant SunPath's Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 24, pp. 4-5.

acts on behalf of the other, the principal, and is subject to the principal's control.'" <u>Indian Harbor Insurance Co. v. Valley Forge Insurance Group</u>, 535 F.3d 359, 364 (5th Cir. 2008) (quoting <u>Happy Industrial Corp. v. American Specialties, Inc.</u>, 983 S.W.2d 844, 852 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.).    "[T]he proponent must show that the alleged principle [sic] has both the right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the assigned task." <u>MEMC Pasadena, Inc. v. Riddle Power, LLC</u>, 472 S.W.3d 379, 399 (Tex. App.—Houston [14th Dist.] 2015).

B.   **Standard of Review for Rule 12(b)(2) Motions**

Federal Rule of Civil Procedure 12(b)(2) permits a party to assert by motion that the court lacks personal jurisdiction.  "When personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" <u>Quick Technologies, Inc. v. Sage Group PLC</u>, 313 F.3d 338, 343 (5th Cir. 2002), <u>cert. denied</u>, 124 S. Ct. 66 (2003) (quoting <u>Mink v. AAAA Development LLC</u>, 190 F.3d 333, 335 (5th Cir. 1999)).  "Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." <u>Sangha v. Navig8 ShipManagement Private Ltd.</u>, 882 F.3d 96, 102 (5th Cir. 2018).  "The defendant must make a 'compelling case.'" <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985)).

"When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a <u>prima facie</u> case that personal jurisdiction is proper.'" <u>Quick Technologies</u>, 313 F.3d at 343-344 (quoting <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir.), <u>cert. denied</u>, 115 S. Ct. 322 (1994)).   "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"   <u>Id.</u> at 344 (quoting <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court must accept the plaintiff's "uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor[,]" but "the prima-facie-case requirement does not require the court to credit conclusory allegations."   <u>Panda Brandywine Corp. v. Potomac Electric Power Co.</u>, 253 F.3d 865, 868-69 (5th Cir. 2001).

### III.  <u>Analysis</u>

Plaintiff does not allege that SunPath itself called his phone numbers in Texas.   Instead, Plaintiff argues that SunPath "vicariously" called Plaintiff through NCC.[36]  SunPath responds that

---

[36]<u>Id.</u> at 6.  Both Plaintiff and SunPath spend some space in briefing this motion addressing whether SunPath can be held vicariously liable for NCC's allegedly unlawful conduct.  Specific personal jurisdiction depends on whether the "alleged injuries [] 'arise out of or relate to'" the defendant's purposeful contacts
(continued...)

Plaintiff cannot establish personal jurisdiction because his "allegations are insufficient and are rebutted by sworn testimony."[37] The Motion to Dismiss reiterates Mr. Garcia's statements that SunPath lacks control over the third-party telemarketers and asserts that it therefore cannot be responsible for their calls.[38]

## A.   Minimum Contacts

For NCC's alleged calls to amount to minimum contacts by SunPath, they must amount to minimum contacts by NCC and be imputable to SunPath.

### 1.   NCC's Calls

SunPath's Motion to Dismiss does not argue that the calls would not amount to minimum contacts by NCC. Most courts to address the question have held that calls to a cell phone can serve as minimum contacts with the state containing the phone's area code

---

[36](...continued) with the state, Burger King, 105 S. Ct. at 2182, not whether the defendant's contacts ultimately support liability. It therefore is not relevant to personal jurisdiction whether SunPath actually authorized, apparently authorized, or ratified NCC's alleged use of prerecorded voice messages, noncompliance with the National Do-Not-Call Registry, or any of the other alleged features that would make the calls violative of the TCPA or Texas Business Code. Instead, the question is whether NCC's act of calling Plaintiff's Texas phone number 25 times can be imputed to SunPath. The court does not address the question of vicarious liability for the allegedly unlawful features on the calls.

[37]SunPath's MTD, Docket Entry No. 22, p. 6.

[38]Id. at 6-7.

when the calls are received there.  E.g., <u>Thomas v. Life Protect</u>
<u>24/7 Inc.</u>, 559 F. Supp. 3d 554, 567-68 (S.D. Tex. 2021).  The court
agrees and concludes that the alleged calls amount to minimum
contacts with Texas by the caller for injuries related to the
calls.   Plaintiff's allegation that NCC made the calls is
uncontroverted  by  SunPath's  Motion  to  Dismiss.    It  is  also
supported  by  Plaintiff's  evidence,  including  the  charge  to
Plaintiff by "National Car Cure" in "West Palm Beach, FL."[39]

### 2.   Imputation of NCC's Calls to SunPath

SunPath argues that the alleged calls cannot be imputed to
it.[40]  In the specific jurisdiction context, the Fifth Circuit has
held that an agency relationship is significant to the imputation
question but "may not be dispositive."  <u>In re Chinese-Manufactured</u>
<u>Drywall</u>, 753 F.3d at 531.  Nonetheless, courts in similar cases
have focused on whether there was an agency relationship with the
calling  entity.    <u>See</u>  <u>Horton  v.  SunPath,  Ltd.</u>,  Civil  Action
No. 3:20-CV-1884-B-BH, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16,
2021), report and recommendation adopted, No. 3:20-CV-1884-B-BH,
2021 WL 977065 (N.D. Tex. March 15, 2021).[41]

---

[39]Exhibit C to Amended Complaint, Docket Entry No. 10-3, p. 2.

[40]SunPath's MTD, p. 7.

[41]<u>See also</u> <u>Callier v. SunPath Ltd.</u>, No. EP-20-CV-00106-FM, 2020
WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020); <u>Cano v. Assured Auto</u>
<u>Group</u>, Civil Action No. 3:20-CV-3501-G, 2021 WL 3036933, at *9
(N.D. Tex. July 19, 2021).

Courts have declined to find an agency relationship based on "the mere fact that telemarketing calls were made on behalf of" the party challenging jurisdiction. See Callier, 2020 WL 10285659, at *3. In Callier the plaintiff alleged that a telemarketing firm made unlawful calls on behalf of SunPath to his Texas cell phone. Id. at *1. "However, he [did] not state the nature of the relationship [the] entities [had] with the unidentified telemarketing firm." Id. at *3. SunPath also submitted affidavits stating that it did not "maintain[] control or oversight over third-party marketing firms." Id. Plaintiff failed to allege or offer evidence that SunPath "had the authority to assign tasks and control the means and details of the" telemarketer's work. Id. The court therefore held that Plaintiff had failed to meet "his pleading burden to establish personal jurisdiction." Id. at *4. But the court, "sensitive to Plaintiff's limited ability to discern the identity of the telemarketing firm . . . and the nature of its relationship with SunPath," granted jurisdictional discovery to clarify the relationship rather than granting the Rule 12(b)(2) motion. Id. Other courts faced with similar generic allegations to support imputing a third party's calls have also concluded that more is needed to show agency.[42]

---

[42]E.g., Born v. Celtic Marketing LLC, Case No. 8:19-CV-01950-JLS-ADS, 2020 WL 3883273, at *4-5 (C.D. Cal. May 20, 2020); Cano, 2021 WL 3036933, at *9-10.

Plaintiff cites a recent order by this court in <u>Baldridge v. SunPath Ltd.</u>, which denied a Rule 12(b)(2) motion by SunPath.[43] Although the order does not explain its reasoning, Plaintiff points out that the plaintiff in that case offered a SunPath Call Center Marketing Agreement as evidence of personal jurisdiction over SunPath.[44]  The court rejected SunPath's Rule 12(b)(2) motion, stating the plaintiff "established Texas has personal jurisdiction over SunPath."[45]

The court is persuaded that the CCMA, if representative of SunPath's relationship with NCC, supports a finding that NCC was SunPath's agent and had authority to make the telemarketing calls. The CCMA requires the seller to "actively market the Products" and to do so "only in the territory defined" in an addendum, to "install, or arrange for the installation, of the Company's Products in accordance with [SunPath's] policies and procedures," and "perform such other acts as are necessary for the proper conduct of the business . . . in accordance with the Company's policies and procedures."  These requirements demonstrate that SunPath had "the right to assign [NCC's] task[s]." <u>MEMC Pasadena</u>, 472 S.W.3d at 399.

---

[43]Order, <u>Baldridge v. SunPath Ltd.</u>, Civil Action No. 4:21-3629, Docket Entry No. 23, p. 1.

[44]Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Plaintiff's Complaint, <u>Baldridge v. SunPath Ltd.</u>, Civil Action No. 4:21-3629, Docket Entry No. 11, pp. 2-3.

[45]Order, <u>Baldridge v. SunPath Ltd.</u>, Civil Action No. 4:21-3629, Docket Entry No. 23, p. 1.

As to control, the CCMA's Standards of Conduct includes seven pages of rules governing the seller's marketing of SunPath's products.  Some of these are simple comply-with-the-law commands, but there are also detailed restrictions and requirements for the wording used in the seller's marketing.[46]  The CCMA also includes numerous requirements governing sales tactics, recording, communication of contractual terms, processing of refunds, collection and use of customer information, and more.[47]  If SunPath had an agreement with NCC containing substantially similar terms, it had the right to "control the means and details of the process by which the agent will accomplish the assigned task."  MEMC Pasadena, 472 S.W.3d at 399.  Likewise these CCMA requirements distinguish this case from Callier, Born, and Cano, where the plaintiffs offered only conclusory allegations that there was an agency relationship or that the calls were made on behalf of the defendants.  Although the Garcia Declaration controverts Plaintiff's allegation that SunPath exercises control over NCC's telemarketing, the court is persuaded that the CCMA supports finding an agency relationship.  Plaintiff argues that SunPath entered into the same CCMA with NCC.[48]  SunPath does not argue that the CCMA is unrepresentative of its relationship with NCC in its Motion to

---

[46]CCMA, Docket Entry No. 12, pp. 8, 10.

[47]Id. at 8-14.

[48]Amended Complaint, Docket Entry No. 10, p. 3 ¶ 22; Plaintiff's Response, Docket Entry No. 24, p. 2.

Dismiss, and it did not file a reply disputing Plaintiff's reliance on the CCMA.

**B.    Traditional Notions of Fair Play and Substantial Justice**

It is fair and reasonable for the court to exercise personal jurisdiction over SunPath. The Fifth Circuit has identified five factors for weighing a defendant's argument that personal jurisdiction would be unreasonable: "(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." Sangha, 882 F.3d at 102.

Texas may be an inconvenient forum for SunPath, but Texas has an interest in litigation enforcing its telephone consumer protection laws, and Plaintiff would be inconvenienced if required to litigate his claims in SunPath's preferred state. Judicial economy does not obviously point in either direction here, although there may be efficiency in litigating TCPA claims in the states where the injuries occur. The states' shared interest arguably points in Plaintiff's favor because enforcement of state telephone consumer protection laws could be frustrated if plaintiffs as a group were forced to travel to the defendants' preferred state.

-16-

SunPath presents no arguments why personal jurisdiction would be unfair other than its argument that it has no minimum contacts with Texas.  But as explained above, Plaintiff has established a prima facie case that the calls can be imputed to SunPath.  SunPath has failed to make a "compelling case" that personal jurisdiction would be unreasonable.  <u>Sangha</u>, 882 F.3d at 102.  Because SunPath has minimum contacts with Texas related to the alleged calls and because exercising personal jurisdiction is reasonable, SunPath's Motion to Dismiss will be denied.

## IV.  <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that it has personal jurisdiction over SunPath.  Defendant, SunPath Ltd.'s, Motion to Dismiss Plaintiff, Samuel Rogers', Amended Complaint [D.E. 10] Pursuant to Federal Rule of Civil Procedure 12(b)(2) (Docket Entry No. 22) is therefore **DENIED**.

**SIGNED** at Houston, Texas, on this 19th day of October, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE